IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

FREDRICK OLSON,                          §
                                         §
                    Plaintiff,           §
                                         §
VS.                                      §     Civil Action No. 3:25-CV-0774-D
                                         §
MICROSOFT CORPORATION,                   §
                                         §
                    Defendant.           §

MEMORANDUM OPINION
AND ORDER

        In this action by plaintiff Fredrick Olson ("Olson") against his former employer,

defendant Microsoft Corporation ("Microsoft"), Microsoft moves for partial dismissal.[1]  It

moves under Fed. R. Civ. P. 12(b)(1) to dismiss Olson's claim under the National Defense

Authorization Act of 2013 ("NDAA"), 41 U.S.C. § 4712, and moves under Rule 12(b)(6) to

dismiss Olson's state-law claims for wrongful discharge and promissory estoppel.  For the

reasons that follow, the court denies Microsoft's Rule 12(b)(1) motion, grants Microsoft's

Rule 12(b)(6) motion, and grants Olson leave to replead.

I

        Microsoft hired Olson in June 2021 as an at-will employee.[2]  Olson alleges that

_____

        [1]Microsoft does not move to dismiss Olson's claim under the Family and Medical
Leave Act.

        [2]The court construes the first amended complaint in the light most favorable to Olson,
accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in
Olson's favor.  *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

Microsoft's Trust Code requires employees to report unethical and illegal conduct, and promises employees that Microsoft will not retaliate against them for reporting violations of the code. Olson asserts that, in addition to the Trust Code, Microsoft executives orally promised that Microsoft would not retaliate against employees.

Microsoft contracted to provide IT services to Freddie Mac, a government sponsored enterprise under the Federal Housing Finance Agency ("FHFA"). In December 2023 Olson was assigned to the "Freddie Mac Azure OpenAI Accelerator project." Am. Compl. (ECF No. 32) ¶ 69. Olson alleges that Microsoft employees who lacked the requisite credentials to access information related to the Freddie Mac project "directed/required Olson" to "leak sensitive data from Freddie Mac's network." *Id.* at ¶¶ 79-80. Olson also asserts that he was "directed/required" to "lie and falsify" a status report, *id.* at ¶ 81, but that he refused and escalated his concerns regarding the Freddie Mac project to his superiors. According to Olson's first amended complaint ("amended complaint"), Microsoft removed him from the Freddie Mac project.

After he was removed, Olson reported "retaliation, ethical, and legal violations" to Microsoft's compliance team. *Id.* at ¶ 95. Olson alleges that the compliance team opened an investigation, but never followed up with him. On June 17, 2024 "Olson reported the perceived unlawful and noncompliant conduct to the Office of the Inspector General for the Federal Trade Commission." *Id.* at ¶ 103.[3] On July 1, 2024 Microsoft terminated Olson

---

[3]Olson alleges that he separately reported his complaint to FHFA's Office of the Inspector General on June 10, 2025.

based on what it maintains was a result of a reorganization of his division. Olson filed this lawsuit in March 2025.

Microsoft now moves to dismiss Olson's NDAA claim under Rule 12(b)(1) for lack of subject matter jurisdiction and to dismiss Olson's state-law claims under Rule 12(b)(6) for failure to state a claim on which relief can be granted. Olson opposes the motion, which the court is deciding on the briefs, without oral argument.

II

The court begins by considering Microsoft's Rule 12(b)(1) challenge to the court's subject matter jurisdiction over Olson's NDAA claim. Section 4712 of the NDAA requires Olson to exhaust administrative remedies before filing suit. *Robertson v. Intratek Comput., Inc.*, 976 F.3d 575, 580 (5th Cir. 2020). The parties contest whether § 4712's exhaustion requirement is jurisdictional or a nonjurisdictional claim-processing rule.

A

The Supreme Court distinguishes between "jurisdictional prescriptions" and "nonjurisdictional claim-processing rules." *Fort Bend Cnty. v. Davis*, 587 U.S. 541, 548 (2019). A jurisdictional prescription marks the bounds of the "court's adjudicatory authority" over "classes of cases." *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004). "By contrast, nonjurisdictional rules govern how courts and litigants operate within those bounds." *Santos-Zacaria v. Garland*, 598 U.S. 411, 416 (2023). This is a significant distinction because "[j]urisdictional requirements cannot be waived or forfeited, must be raised by courts *sua sponte*, and . . . do not allow for equitable exceptions." *Boechler, P.C.*

- 3 -

*v. Comm'r*, 596 U.S. 199, 203 (2022).  A statutory provision is "jurisdictional only if Congress 'clearly states' that it is." *Id.* (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006)).  "[T]raditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences." *United States v. Kwai Fun Wong*, 575 U.S. 402, 410 (2015).  Applying this "clear-statement rule," the Court has yet to "hold that any statutory exhaustion requirement is jurisdictional." *Santos-Zacaria*, 598 U.S. at 417.

B

Microsoft's Rule 12(b)(1) motion turns on whether Congress has clearly stated that § 4712's exhaustion requirement is jurisdictional.  *See Boechler*, 596 U.S. at 204.[4]  Section 4712(c)(2) provides:

> If the head of an executive agency issues an order denying relief under paragraph (1) or has not issued an order within 210 days after the submission of a complaint under subsection (b) . . . the complainant shall be deemed to have exhausted all administrative remedies with respect to the complaint, and the complainant may bring a de novo action at law or equity against the contractor, subcontractor, grantee, subgrantee, or personal services contractor to seek compensatory damages and other relief available under this section in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy.

41 U.S.C. § 4712(c)(2).  Olson maintains that § 4712(c)(2)'s "exhaustion requirement is

---

[4]The Fifth Circuit has not considered whether § 4712's exhaustion requirement is jurisdictional.  Microsoft cites three district court decisions that conclude that § 4712's exhaustion requirement is jurisdictional.  These decisions are not binding on this court.

nonjurisdictional" because it "fails to contain explicit jurisdictional language." P. Resp. (ECF No. 35) 10. Microsoft responds that the statute "describes the jurisdiction of the court in terms of existing only after the administrative process is complete." D. Reply (ECF No. 38) 2.

The court concludes that Congress has not clearly stated that § 4712(c)(2)'s exhaustion requirement is jurisdictional. Although the statute refers to the court's jurisdiction immediately after specifying the exhaustion requirement, mere proximity is not enough. *See Boechler*, 596 U.S. at 206-07. "Rather than proximity, the important feature is . . . a clear tie between the [exhaustion requirement] and the jurisdictional grant." *Id.* at 207. In *Boechler* the Court applied the last-antecedent rule to a provision of the tax code to determine whether a clear tie existed between the provision's jurisdictional language and its procedural bar. *Id.* at 204-05. "The last-antecedent rule instructs that the correct antecedent is usually 'the nearest reasonable' one." *Id.* at 205. Section 4712(c)(2)'s jurisdictional language appears near the end of the provision and states that the district court "shall have jurisdiction over such an action." 41 U.S.C. § 4712(c)(2). "[S]uch an action" naturally refers to an "action at law or equity" rather than the earlier exhaustion requirement. *See id.* Because the jurisdictional language is not referring back to the exhaustion requirement, a clear tie between § 4712(c)(2)'s jurisdictional language and exhaustion requirement is missing. *See Boechler*, 596 U.S. at 204-05 (applying last-antecedent rule to conclude 26 U.S.C. § 6330(d)(1) "does not clearly mandate [a] jurisdictional reading"); *Villegas v. Noem*, ___ F.4th ___, 2025 WL 2426857, at *6 (5th Cir. Aug. 22, 2025) (applying last-antecedent

rule to conclude 8 U.S.C. § 1503(a)'s procedural bar is nonjurisdictional).

Nothing else in the text or structure of § 4712(c)(2) suggests that the exhaustion requirement is jurisdictional. Section 4712(c)(2) states that the district court shall have jurisdiction "without regard to the amount in controversy." 41 U.S.C. § 4712(c)(2). Congress excluded from § 4712(c)(2) an amount in controversy threshold similar to 28 U.S.C. § 1332's amount in controversy threshold for diversity jurisdiction. The absence of a "threshold ingredient akin to 28 U.S.C. § 1332's monetary floor" indicates that Congress is not restricting the subject matter jurisdiction of district courts in § 4712(c)(2). *See Arbaugh*, 546 U.S. at 515. Section 4712(c)(2) also does not clearly condition jurisdiction on exhaustion or prohibit the court's exercise of jurisdiction. *See Boechler*, 596 U.S. at 206 ("To satisfy the clear-statement rule, the jurisdictional condition must be . . . clear."); *Santos-Zacaria*, 598 U.S. at 418 (explaining that prohibitory language such as "no court shall have jurisdiction" is "clearly jurisdictional language"). Furthermore, § 4712(c)(2) is titled "Exhaustion of remedies," whereas a separate provision, § 4712(c)(5), is titled "Judicial review." 41 U.S.C. § 4712(c)(2), (c)(5). That Congress chose to title § 4712(c)(2) "Exhaustion of remedies" and elected to create a separate provision titled "Judicial review" suggests that Congress regarded § 4712(c)(2) as a claim processing rule, not a jurisdictional prescription. *See Henderson v. Shinseki*, 562 U.S. 428, 439 (2011) (relying on statute's organization to conclude that Congress likely regarded statute's time bar as a claim processing rule). Thus § 4712(c)(2) lacks the clear statement necessary to qualify as jurisdictional.

- 6 -

Microsoft's Rule 12(b)(1) motion relies on the premise that Olson's alleged failure to exhaust deprives this court of jurisdiction over his NDAA claim. Because § 4712(c)(2)'s exhaustion requirement is not jurisdictional, the court denies Microsoft's Rule 12(b)(1) motion. *See Lopez-Santiago v. Coconut Thai Grill*, 2014 WL 840052, at *3 (N.D. Tex. Mar. 4, 2014) (Fitzwater, C.J.) (denying Rule 12(b)(1) motion where statutory requirement was not jurisdictional).[5]

III

The court next considers whether Olson's wrongful discharge and promissory estoppel claims state a claim on which relief can be granted.

A

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [plaintiff's amended] complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*,

―――――――――――

[5]In reply, Microsoft contends that the court should dismiss Olson's NDAA claim under Rule 12(b)(6). But Microsoft's motion to dismiss Olson's NDAA claim is not based on Rule 12(b)(6), and the court declines in its discretion to convert the Rule 12(b)(1)-based motion into a Rule 12(b)(6)-based motion *sua sponte*. *See Lopez-Santiago*, 2014 WL 840052, at *3 n.4 (declining to convert Rule 12(b)(1) motion to Rule 12(b)(6) motion); *Commodity Futures Trading Comm'n v. UForex Consulting, LLC*, 2007 WL 2350238, at *1 n.1 (W.D. La. Aug.11, 2007) ("[T]he motion before the Court has not asked for relief pursuant to 12(b)(6) . . . the Court declines to *sua sponte* convert the 12(b)(1) motion to a 12(b)(6).").

495 F.3d 191, 205 (5th Cir. 2007)).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678.

B

In *Sabine Pilot Serv., Inc. v. Hauck* the Supreme Court of Texas recognized an exception to the employment at-will doctrine: an employee may recover for wrongful discharge when his refusal to perform an illegal act is the sole basis for his termination. *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985).  To establish a prima facie case of wrongful discharge under *Sabine Pilot*, the employee must demonstrate that (1) he was required to commit an illegal act carrying criminal penalties; (2) he refused to engage in the illegal act; (3) he was discharged; and (4) the sole reason for his discharge was his

refusal to commit the illegal act. *White v. FCI USA, Inc.*, 319 F.3d 672, 676 (5th Cir. 2003) (per curiam).

Olson alleges that Microsoft required him to engage in various illegal acts, such as falsifying reports and leaking data to unauthorized personnel. In response, according to Olson's amended complaint, he refused "to engage in the various illegal acts, refused to be complicit in them and refused to acquiesce in other Microsoft employees' commission and engagement in the various illegal acts and reported the unlawful conduct." Am. Compl. (ECF No. 32) ¶ 138. And as a result, Olson asserts, Microsoft terminated his employment.

The court concludes that Olson has not pleaded a plausible claim for wrongful discharge under *Sabine Pilot*. Olson alleges that Microsoft terminated him, not only as a result of his refusal to engage in illegal activity, but also his decision to "report[] the unlawful conduct." *Id.* at ¶¶ 138-39. Reporting illegal conduct is not an illegal act in and of itself. And the elements of a *Sabine Pilot* claim require that the employee show: that he was required to commit an illegal act carrying criminal penalties; he refused to engage in the illegal act; he was discharged; and the sole reason for his discharge was his refusal to commit the illegal act. Because Olson alleges that his decision to report the unlawful conduct partially contributed to his termination, the court cannot reasonably infer from the amended complaint that his refusal to engage in an illegal act was the sole reason for his discharge. Accordingly, the court grants Microsoft's motion to dismiss this claim. *See Adams v. Mut. of Omaha Ins.*, 2014 WL 1386563, at *5 (N.D. Tex. Apr. 9, 2014) (Fitzwater, C.J.) (dismissing wrongful discharge claim under *Sabine Pilot* where plaintiff alleged multiple

factors contributed to his termination).[6]

C

The court now turns to Microsoft's Rule 12(b)(6) motion to dismiss Olson's promissory estoppel claim.

"Under Texas law, '[t]he requisites of promissory estoppel are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment.'" *MetroplexCore, L.L.C. v. Parsons Transp., Inc.*, 743 F.3d 964, 977 (5th Cir. 2014) (per curiam) (quoting *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)). Detrimental reliance on the promise must be "reasonable and justified." *Hinds v. Orix Cap. Mkts., L.L.C.*, 2003 WL 22132791, at *5 (N.D. Tex. Sept. 11, 2003) (Solis, J.).

Olson alleges that Microsoft promised in its Trust Code and orally that it would not retaliate against employees who spoke up, and that Olson relied on these promises to his detriment by reporting ethical and legal violations. Microsoft maintains that Olson's status as an at will-employee bars his reliance on these alleged promises and that any promise made did not alter his at-will employment status. Olson responds that Microsoft's written and oral "anti-retaliation promises specifically and expressly limit Microsoft's right to terminate an employee." P. Resp. (ECF No. 35) 15.

The court concludes that Olson has not pleaded a plausible claim for promissory

---

[6]The defect in Olson's wrongful discharge claim arises from the allegations in the claim itself, not his decision to plead alternative claims. *See Adams*, 2014 WL 1386563, at *5.

- 10 -

estoppel. Olson's status as an at-will employee "does not provide any assurances about [his] employer's future conduct and is not a reasonable basis for reliance." *Hinds*, 2003 WL 22132791, at * 7; *see also Vlasek v. Wal-Mart Stores, Inc.*, 2008 WL 2937760, at *10 (S.D. Tex. July 22, 2008) (Rosenthal, J.) ("A promise to provide employment-at-will does not provide a basis for detrimental reliance on continued employment, as a matter of law."). Olson's contention that Microsoft's anti-retaliation promises modified his employment status is unavailing. Oral representations and written policies do not "modify an employee's at-will employment status unless [they] expressly and unequivocally evidence[] an intent to limit the conditions under which an employee may be terminated." *Adams*, 2014 WL 1386563, at *4. Olson's employment agreement contains a provision that disclaims reliance on any written or oral statement that would alter his at-will employment status. This disclaimer negates any implication that the anti-retaliation promises modified the at-will relationship or could be relied on. *See Fed. Exp. Corp. v. Dutschmann*, 846 S.W.2d 282, 283 (Tex. 1993); *Paso Del Norte Motors, LP v. Tri Star Partners*, 2015 WL 13778413, at *10 (W.D. Tex. Sept. 3, 2015) ("[A] disclaimer of reliance clause can bar promissory estoppel claims.").[7] Because Olson

_____

[7]In his response, Olson maintains that the oral and written anti-retaliation promises do not contain any type of disclaimer. Olson does not address the provision in his employment agreement that disclaims reliance on any oral or written statement contrary to his employment agreement. Yet he does not contend that, under Texas law, reliance on a disclaimer must originate from the same document or statement as the alleged promise. To the contrary, courts have concluded otherwise. *See, e.g.*, *Snow v. Mike Bloomberg 2020 Inc.*, 2021 WL 1966845, at *5 (N.D. Tex. May 17, 2021) (Ray, J.) (collecting cases), *aff'd sub nom.*, *Hamilton v. Mike Bloomberg 2020, Inc.*, 2021 WL 5272218 (5th Cir. Nov. 11, 2021).

cannot satisfy the reliance element, the court dismisses his promissory estoppel claim.

IV

"Because the court's usual practice when granting a motion to dismiss is to permit a plaintiff at least one opportunity to replead, the court will give [the plaintiff] an opportunity to amend his complaint." *Shah v. Univ. of Tex. Sw. Med. Sch.*, 54 F.Supp.3d 681, 707 (N.D. Tex. 2014) (Fitzwater, C.J.) (citing *In re Am. Airlines, Inc., Priv. Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.)). Olson must file his second amended complaint no later than 28 days after the date this memorandum opinion and order is filed.

\* \* \*

For the reasons explained, the court denies Microsoft's Rule 12(b)(1) motion to dismiss, grants Microsoft's Rule 12(b)(6) motion to dismiss, and grants Olson leave to replead.

**SO ORDERED**.

September 17, 2025.


_____
SIDNEY A. FITZWATER
SENIOR JUDGE

- 12 -